IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN 18 P 1:45

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNIVERSITY OF MASSACHUSETTS,

        Plaintiff,

v.

JAMES M. ROBL AND PHILIPPE COLLAS,

        Defendants.

Civil Action No. 04-11013-RGS

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Pursuant to 28 U.S.C. §§ 1441 and 1447(c), Plaintiff University of Massachusetts ("University") respectfully moves for an order remanding this matter to the Superior Court (Suffolk County) for the Commonwealth of Massachusetts because this Court lacks federal subject matter jurisdiction over the action.

There is no diversity jurisdiction, as defendants allege, under 28 U.S.C. § 1332, because this cause of action is between the Commonwealth of Massachusetts, on one hand, which is not a citizen of any State, and a citizen of a State and a citizen or subject of a foreign state, on the other hand. The defendants' attempt to characterize the Commercial Ventures and Intellectual Property office of the University of Massachusetts as the "real party in interest" and as an autonomous entity that should be deemed a citizen of the Commonwealth is unavailing.

There is no federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338 because the University's cause of action seeking to enforce an agreement by the defendants granting the University ownership of intellectual property does not arise under the patent laws of the United States. The plaintiff's cause of action is a straightforward state law claim to enforce a contract,

the interpretation of which does not require for its determination resolution of any issue of federal patent law.

## I.    **Procedural History**

On February 22, 2004, the University filed its Complaint in this matter with the Superior Court (Suffolk County) for the Commonwealth of Massachusetts. The Complaint includes counts for declaratory judgment under M.G.L. c. 231A, breach of contract seeking specific performance, injunctive relief and damages, intentional interference with contract and prospective contractual relations, conversion, breach of duty, and breach of the covenant of good faith and fair dealing. The action is based upon the misappropriation by the defendants of valuable inventions in the field of animal cloning and cell reprogramming, which inventions were made by the defendants at the University and with University support, funds, facilities, equipment, and materials and are therefore owned by the University under express agreements between the defendants and the University stating that the University owns "Intellectual Property (other than Exempted Scholarly Works) that is made, discovered or created by any Covered Individual who makes significant use of University resources (including University-administered funds or University-funded time, facilities, or equipment). . . ." Complaint, ¶ 11.

On April 19, 2004, the University served the Complaint by certified mail on defendants James M. Robl ("Robl") and Philippe Collas ("Collas"). On May 7, 2004, the defendants filed a motion with the Suffolk Superior Court to enlarge the time to answer the Complaint from May 10 to May 24, which the University did not oppose, and which was granted by Suffolk Superior Court.

On May 19, 2004, the defendants filed their Notice of Removal seeking to remove the action to the United States District Court for the District of Massachusetts.

2

On May 26, 2004, the defendants served an answer to the Complaint. Defendants did not assert any defense under Fed.R.Civ.P. 12(b)(6)(1)-(5) or (7) (subject matter, personal jurisdiction, venue, service of process, manner of service of process, or failure to join a necessary party) or any counterclaim.

## II.    Governing Legal Standard for Determining Propriety of Remand

The removal statute provides that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States ...." 28 U.S.C. § 1441(a). Therefore, the party seeking removal has the burden of establishing that there is a basis for original federal jurisdiction. *See Hunneman Real Estate Corp. v. Eastern Middlesex Ass'n of Realtors, Inc.*, 860 F. Supp. 906, 911 (D. Mass. 1994).

A motion for remand for lack of federal subject matter jurisdiction may be made at any time before final judgment is entered under 28 U.S.C. § 1447(c). "Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Montana v. Abbott Labs.*, 266 F. Supp. 2d 250, 261 (D. Mass. 2003) (quoting *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (internal quotation omitted)). In considering whether removal was proper, courts may look beyond the statutory citations and characterizations of the pleadings to the actual nature of the claims as they appear on the face of the complaint at the time the petition for removal is filed. *See, e.g., Ching v. Mitre Corp.*, 921 F.2d 11, 13 (1st Cir. 1990).

## III.    The Court Lacks Diversity Jurisdiction over the University

3

Defendants assert that federal jurisdiction exists in this matter under diversity of

citizenship as set forth in 28 U.S.C. § 1332(a). That statute provides in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

The University is not a "citizen" of any State, however, and actions between citizens of a

State and a foreign state, on one hand, and a State, on the other, are not a category of cases for

which Congress has authorized the exercise of original federal diversity jurisdiction. Rather, the

University is a sovereign instrumentality. *See Cantwell v. University of Massachusetts*, 551 F.2d

879, 880 (1st Cir. 1977) (recognizing that the University of Massachusetts is a sovereign

instrumentality and thus affirming the district court's decision to dismiss the action on the basis

of sovereign immunity). *See also Neo Gen Screening, Inc. v. New England Newborn Screening

Program*, 187 F.3d 24, 27 (1st Cir. 1999) (noting that plaintiff conceded to the district court's

explicit finding that the University of Massachusetts is an arm of the Commonwealth based on

its mission, its governance, its financial relationship to the state and similar matters).[1]  Because

the University is a sovereign instrumentality, and not a citizen, it is not subject to diversity

jurisdiction. *See Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) ("There is no question

that a State is not a 'citizen' for purposes of the diversity jurisdiction."); *University of Rhode*

---

[1] Another court outside this Circuit also found that the University of Massachusetts is an arm of the state. *See Daniel v. American Bd. of Emergency Med.*, 988 F. Supp. 127, 178-81 (W.D.N.Y. 1997). Moreover, Massachusetts state courts have held that the University of Massachusetts is an agency of Massachusetts. *See McNamara v. Honeyman*, 406 Mass. 43, 546 N.E.2d 139, 142 (1989); *Robinson v. Commonwealth*, 32 Mass. App. Ct. 6, 584 N.E.2d 636, 638 (1992). And, "most unincorporated state agencies ... are readily recognizable as

4

*Island*, 2 F.3d at 1202 ("A State cannot be a 'citizen' of itself for purposes of diversity jurisdiction.").

Defendants implicitly concede that the University is the sovereign in their Notice of Removal because they do not attempt to characterize it otherwise.[2] Rather, to avoid *Cantwell*, they attempt to characterize the "real party in interest" as the University's Office of Commercial Ventures and Intellectual Property ("CVIP") asserting that CVIP is "an independent subdivision of the University." Notice of Removal, ¶ 4. Defendants assert "[u]pon information and belief, the CVIP is organizationally and financially autonomous from the University." *Id.* From these two premises, they argue that CVIP is therefore a citizen of a State, satisfying the requirements of Section 1332. However, there is no evidence that CVIP is other than a department of the University, which is an arm of the state.

The Court is required to make the determination of diversity jurisdiction on the face of the Complaint and the Notice of Removal, *see, e.g., McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("the party who seeks the exercise of jurisdiction in his favor .... must allege in his pleading the facts essential to show jurisdiction"), but the defendants allege

---

mere 'arms' or 'alter egos' of the State." *University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1204 (1st Cir. 1993).

[2] The University's status as a sovereign instrumentality may also bar removal on grounds of sovereign immunity under the Eleventh Amendment. *See Moore Ex Rel. State of Miss. v. Abbott Labs.*, 900 F. Supp. 26, 30-31 (S.D. Miss. 1995) (finding that because the State of Mississippi, as plaintiff, did not consent to the removal of the action to federal court, the court lacked jurisdiction over the action due to the proscription of the Eleventh Amendment); *see also California v. Steelcase Inc.*, 792 F. Supp. 84, 86 (S.D. Cal. 1992). *But see, e.g., Regents of the University of Minnesota v. Glaxo Wellcome, Inc.*, 58 F. Supp. 2d 1036, 1038-40 (D. Minn. 1999) (holding that the Eleventh Amendment did not bar maintenance of an action in federal court if the action was removed to federal court by a defendant being sued by a state); *Vermont v. Oncor Communications, Inc.*, 166 F.R.D. 313, 321 (D. Vt. 1996) (same). Whether sovereign immunity is a "defense" to removal is a question that the First Circuit has not yet decided, and the Court need not reach this issue if it finds lack of jurisdiction based on other grounds.

no facts supporting their assertion that CVIP is an autonomous entity. There is no factual allegation, much less evidence, that CVIP is incorporated separately from the University, and there is no case determining that CVIP is a separate entity. The agreements that are the subject of the dispute are between the University and the defendants, *see, e.g.*, Complaint, Exs. 2-3. Defendants do not identify any agreements entered into with CVIP directly. They provide no evidence that any entity other than the University pays the salaries and provides the funding for professors and inventors such as the defendants, or that CVIP, and not the University is responsible for the attorneys' fees in this matter.

The First Circuit has set forth several factors for evaluating whether an entity is an arm of the state. *See University of Rhode Island*, 2 F.3d at 1205 ("We have propounded an illustrative list of criteria-by no means exhaustive-often germane to the Eleventh Amendment 'arm' or 'alter ego' determination, including whether the entity (1) performs an 'essential' or 'traditional' governmental function, as opposed to a nonessential or merely proprietary one; (2) exercises substantial autonomy over its internal operations; (3) enjoys meaningful access to, and control over, funds not appropriated from the State treasury; (4) possesses the status of a separate 'public corporation'; (5) may sue and be sued in its own name; (6) can enter into contracts in its own name; (7) has been granted a state tax exemption on its property; or (8) has been expressly debarred from incurring debts in the State's name or behalf."). That is, there is no lack of facts that may be alleged that relate to the issue of autonomy, but the defendants' argument for removal here must be rejected because they have not alleged any such facts. See also *Regents of the University of California v. Doe*, 519 U.S. 425 (1997), where the Court, while disagreeing with the Ninth Circuit's application of the first factor, recognized a five- factor test applied by the Ninth Circuit to assess whether an entity is an arm of the state. The five factors were: "[1]

6

whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has power to take property in its own name or only the name of the state, and [5] the corporate status of the entity." *Id.* at 428 n.3 (quoting *Doe v. Lawrence Livermore Nat'l Lab.*, 65 F.3d 771, 774 (9th Cir. 1995)).

Because there is no factual allegation or evidence that CVIP is other than a department of the University, which is an arm of the state, the defendants have not met their burden on removal, and the court lacks diversity jurisdiction in this matter.

## IV.    The Court Lacks Federal Question Jurisdiction over the University Because the University's Claims Do Not Arise Under Federal Patent Law

Pursuant to 28 U.S.C. § 1338(a), "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." In *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988), the Court set forth the analysis to be applied for determining jurisdiction under Section 1338. The Court held that, like the well-pleaded complaint rule used in the federal question jurisdiction analysis, the scope of Section 1338 extends to: (1) claims where federal patent law creates the cause of action, or (2) claims where the plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Id.* at 808-09. Like the well-pleaded complaint rule applied in the federal question jurisdiction context, the Court found that whether a claim arises under patent law must be determined from the language of the plaintiff's complaint, unaided by whether a patent-law defense is anticipated to arise. *Id.* at 809.

Moreover, the Court found that Section 1338(a) jurisdiction is not necessarily invoked if a claim alleges a single theory under which resolution of a patent-law question is essential. Rather, "a claim supported by alternative theories in the complaint may not form the basis for 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810.[3]

Following the Supreme Court's rule announced in *Christianson,* the United States Court of Appeals for the Federal Circuit considered comprehensively the question of whether a claim arises under Section 1338 in *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1324-25 (Fed. Cir. 1998), *rev'd on other grounds, Midwest Indus., Inc. v. Karavan Trailer, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999). In *Hunter Douglas,* the Federal Circuit held that a claim based upon an alleged federal "right to copy," which also affirmatively sought a declaration of patent invalidity, did not arise under Section 1338. The Court held that the declaratory judgment claim was not ripe and that there was no federal "right to copy" and therefore no federal basis for the claim. *Id.* at 1325. However, the Federal Circuit found that there was federal jurisdiction over a claim for injurious falsehood under state law for the opposing party's allegedly false statements that they had "exclusive rights" to the technology. The Federal Circuit found that the claim for injurious falsehood necessarily plead and required proof, at least implicitly, of whether the opposing party's patent was invalid as the truth or falsity

---

[3] Although the Court in *Christianson* and *Holmes* was considering whether the Federal Circuit had appellate jurisdiction of a District Court judgment under 28 U.S.C. § 1295(a)(1), and was not interpreting Section 1338 directly, Section 1295(a)(1) grants the Federal Circuit exclusive jurisdiction over "an appeal from a final decision of a district court of the United States … if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C.] section 1338 …." Thus, the Court in each case was required to determine whether the district court had original jurisdiction under Section 1338. *See Christianson*, 486 U.S. at 807 ("the jurisdiction issue before us turns on whether this is a case 'arising under' a federal patent statute, for if it is then the jurisdiction of the District Court was based at least 'in part' on 1338"); *Holmes*, 535 U.S. at 829 ("the Federal Circuit's jurisdiction is fixed with reference to that of the district court, and turns on whether the action arises under federal patent law").

of the assertion of "exclusive rights" depended upon resolution of this issue. *Id.* at 1331. The

Federal Circuit noted four areas in which it has held, post-*Christianson*, that substantial federal

patent law claims require a conclusion that an asserted state claim arises under Section 1338:

infringement, inventorship issues under 35 U.S.C. § 116, attorneys' fees, and the right to revive

abandoned patent applications. *Id.* The holding in the *Hunter Douglas* case itself added

"validity" and "unenforceability" where they were found to be a critical element of *prima facie*

proof of the claim. *Id.* However, the Court noted expressly that a claim that turned on both

inventorship and ownership did not arise under federal patent laws. *Id.* (citing *Jim Arnold Corp.*

*v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir 1997)). Here, who the inventors are is

not even in dispute and the issue is therefore solely that of "ownership" and, therefore, the

University submits that there is no federal jurisdiction over the state law claims.

The defendants allege that "the fundamental and dispositive inquiry underlying the

University's entire case" is "the construction of the claims in the Defendants' patent

application." Notice of Removal, ¶ 3. However, this is an overly narrow characterization of the

University's claim of ownership, which conveniently attempts to make the University's

ownership interest identical to and with the issue of "invention." The University's ownership

interest, and therefore its ability to prove its claim, is far broader. The University's Intellectual

Property Policy provides, in relevant part:

> The University will own any *Intellectual Property* (other than Exempted
> Scholarly Works) that is made, discovered or created by any Covered Individual
> who makes significant use of University resources (including University-
> administered funds or University-funded time, facilities, or equipment) in
> connection with the development of such Intellectual Property.

Complaint, ¶ 11 (emphasis added).

9

"Intellectual Property" is defined as "Inventions, Copyrightable Works, and Tangible

Research Materials." Complaint, Ex. 1, at 106.2. "Inventions" are defined as: "A discovery or

development that *may* be protectable under the patent laws of the United States, the United States

Plant Variety Protection Act, or equivalent laws in other countries." *Id.* (emphasis added). Thus,

defendants' formulation of the University claim as turning on "patentable inventions" is incorrect

because "patentable inventions" is really only a subset of the "inventions," patentable or

otherwise, that the University owns, which is in turn a subset of the "intellectual property" that

was made, discovered or created by the defendants while at the University owned by the

University.[4] Even if the specific issue under the Intellectual Property Policy is "invention,"

defendants are incorrect when they assert in their Notice of Removal at page 3, "What constitutes

an invention is governed by 35 U.S.C. Section 101." Section 101 merely defines the subject

matter of those inventions which may be eligible for patent protection, provided that they meet

the other criteria of the Patent Act.

As the Supreme Court noted in the *Aronson* case, merely because a contract claim relates

to patent law issues does not mean that the claim arises under federal patent law. *Aronson v.*

*Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979) ("State law is not displaced merely because

the contract relates to intellectual property which may or may not be patentable ...."); *Jim Arnold*

*Corp*, 109 F.3d at 1572 ("It is well settled that if the patentee pleads a cause of action based on

rights created by a contract, or on the common law of torts, the case is not one 'arising under' the

---

[4] Similarly, Robl's Participation Agreement required him to assign to the University all
"discover[ies] or invention[s]" which he "conceive[d] or reduce[d] to practice." Complaint,
Ex. 2. These terms are not defined in the Participation Agreement and thus do not
necessarily only include patentable inventions. Collas' Participation Agreement assigned his
right, title and interest in any "Inventions, Copyrightable Works, and Tangible Research
Materials," as those terms are defined in the University's Intellectual Property Policy.
Complaint, Ex. 3.

patent laws."); *Beghin-Say, Int'l, Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1571 (Fed. Cir. 1984) ("That the involved contracts may or may not constitute agreements to assign future patent applications does not convert a contract dispute cognizable in state courts to a federal question appropriate for determination in a federal court.").

One case presented facts nearly the same as those at issue in this action. In *American Telephone and Telegraph Co. v. Integrated Network Corp.*, 972 F.2d 1321 (Fed. Cir. 1992), the plaintiff, AT&T, brought an action in state court that was removed to federal court. AT&T's complaint asserted state law counts of: (1) breach of contract, (2) breach of fiduciary duty, (3) misuse and misappropriation of proprietary information, and (4) inducing breach of contract and misuse and misappropriation of proprietary information. *Id.* at 1322. AT&T alleged that four former employees invented a digital data communications terminal and modules system while they were employees of AT&T, and then after leaving AT&T, improperly assigned the patent covering it to another company. *Id.* While at AT&T, the former employees had signed an agreement whereby they assigned all their rights to "inventions" that were "made or conceived" during the period of their employment. *Id.* at 1323. Addressing whether removal was appropriate, the court first easily found that since none of the asserted claims were created by patent law, the first prong of the *Christianson* analysis was not satisfied. *Id.* at 1324. Turning to the second prong, the court reasoned that the only possible patent issue in the case concerned the issue of interpreting the contract's language about "inventions ... conceived." The court held that this was not solely a technical question of patent law because the meaning of "inventions" did not necessarily only cover those which were patentable, and the issue of when the conception occurred might depend more on common sense than patent law. *Id.* The court stated that

11

"[b]ecause 'inventions ... conceived' has both patent and general law meanings, AT&T may rely on one theory with patent connotations, and on another theory involving no patent question" without invoking federal jurisdiction. *Id.* The court thus ordered the action to be transferred back to state court. *Id.* at 1325.

Here, as in *American Telephone and Telegraph Co.*, the University's Complaint alleges that the defendants breached a contract with the University by misappropriating inventions that were owned by the University under express agreements – namely, the University's Intellectual Property Policy (attached as Exhibit 1 to the Complaint) and each of the defendant's Participation Agreements (attached as Exhibits 2 and 3 to the Complaint). Interpreting the Intellectual Property Policy and the Participation Agreements does not require the determination of a question of federal patent law. Like the agreement in *American Telephone and Telegraph Co.*, the University's Intellectual Property Policy does not necessarily only cover those inventions which are patentable, and thus the University's right to relief does not necessarily depend on a question of the interpretation of the claims in the defendants' patent applications. In fact, so long as the University can show that the subject matter of the defendants' patent applications was created using University resources, at least in part, a triable issue of fact should exist regarding the University's claims without invoking questions of federal patent law.

The Court in *American Telephone and Telegraph Co.* likewise rejected federal jurisdiction based upon the allegation that "conception" of the invention was at issue. As noted in connection with defendants' citation of 35 U.S.C. § 101, above, where the contract at issue does not define or limit ownership to patentable inventions only, conception does not depend on Section 101 or any other federal patent law, but rather may depend more upon common sense. *American Telephone and Telegraph Co.*, 972 F.2d at 1324.

12

In sum, the gist of defendants' argument is that notions of federal law and uniformity mandate federal jurisdiction over any claim that may involve determination of some question of patent law, even though the claim may also be resolvable entirely without resort to patent law. This is not the law. Accepting defendants' formulation of the jurisdictional issue would lead to a decision that would federalize every contract action that involved or touched on patents, a result clearly rejected by the Supreme Court in *Aronson* and unchanged by the federal statutes enacted and interpreted since *Aronson* that created the Federal Circuit Court of Appeals.

## VI.    Conclusion

Because there is no basis in this Court for original federal jurisdiction, the University respectfully requests that the Court remand this matter to the Superior Court (Suffolk County) for the Commonwealth of Massachusetts.

Dated:  June 18, 2004

Of Counsel:

Terence P. O'Malley
General Counsel
University of Massachusetts
One Beacon Street, 26th Floor
Boston, MA 02108
(617) 287-7098

Respectfully submitted,

University of Massachusetts

By its attorneys:

Thomas F. Reilly, Attorney General

*Heidi E. Harvey*
Heidi E. Harvey (BBO #548114)
Special Assistant Attorney General
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110
(617) 542-5070

13

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing was delivered by hand to attorney for defendants, Thomas Holt, Esq., Kirkpatrick & Lockhart LLP, 75 State Street, Boston, MA 02109 this 18th day of June, 2004, as set forth below:

20880777.doc

14