UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11013-RGS

UNIVERSITY OF MASSACHUSETTS

v.

JAMES M. ROBL AND PHILIPPE COLLAS

MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFF'S MOTION TO REMAND

August 2, 2004

STEARNS, D.J.

The parties being familiar with the court's thinking from the questions raised and the comments made at the hearing, and the court being thoroughly familiar with the parties' positions from their well-presented arguments, I will, in the interests of expediency, simply limn the rationales for my decision.

1.  There is no basis for federal question jurisdiction. What is at issue is a contractual agreement that confers on the University ownership over intellectual property "that is made, discovered or created by any Covered Individual who makes significant use of University resources." Resolution of this dispute does not, as defendants contend, involve any issue of patent claim construction. It rather involves issues of fact and contract law – did the defendants develop the inventions for which they are attempting to prosecute patents using University funds and facilities – and, if so, was such use "significant"?[1]

---

[1] To the extent that patent claims might be injected into the case – however doubtful the prospect – it would be defensively so. "For better or worse . . . a defendant may not remove a case to federal court unless the *plaintiff's complaint* establishes that the case

2. The diversity of citizenship claim presents a closer issue. If the University through its Commercial Ventures and Intellectual Property (CVIP) office is functioning as an "arm of the state," it for all pertinent purposes is the alter-ego of the State and diversity jurisdiction does not exist.[2] See Moor v. County of Alameda, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of diversity jurisdiction."). Whether an entity functions as an "arm of the state" is determined by federal law, Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 n.5 (1997), which is governed by a multi-factor test of devilish complexity that has been developed during decades of litigation. See, e.g., Metcalf & Eddy, Inc. v. Puerto Rico Acqueduct & Sewer Auth., 991 F.2d 935, 939-940 (1st Cir. 1993). As plaintiff University of Massachusetts points out, it has been found to be an "arm of the state" by at least two Massachusetts district courts that have wrestled with the issue. See Neo Gen Screening, Inc. v. New England Newborn Screening Program, 187 F.3d 24, 27 (1st Cir. 1999). It may also be true, as defendants argue, that an entity can be an "arm of the state" while performing some functions but not others. Cf. Doe, 519 U.S. at 427 n.2 (an undecided issue). In this regard, defendants maintain that by stepping out of its role as a teaching institution and by undertaking a research program generating an "economic payback," the University has assumed a proprietary function alien to the

---

'arises under' federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10 (1983) (emphasis in original). This would be true even if the defensive matter was the only question truly at issue in the case. Id. at 14.

[2]While defendants had advanced the argument in their removal notice that CVIP is an "independent subdivision of the University" and should be treated as such for diversity purposes, that argument was neither advanced in their brief nor at oral argument. I thus deem it waived.

traditional mission of a public institution of higher education.  Depending perhaps on how hoary is one's definition of "traditional," this is a very debatable point.  The paradigm of a university whose functions include research as well as teaching traces its origin at least as far back as Baron von Humboldt's early nineteenth century conceptual model for the University of Berlin.  Although antithetical to Cardinal Newman's conception of the ideal university, the competition for scarce public resources has inclined most contemporary state-owned universities to adopt an entrepreneurial role with respect to research that offers the prospect of a commercial dividend.[3]

While, as I indicated, the issue is not by any means open and shut, and while defendants make a relatively strong case, analogizing the University of Massachusetts to the University of Rhode Island in University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200 (1st Cir. 1993), I am persuaded by the similarity to the facts in Neo Gen Screening (where the issue was revenues earned for the University of Massachusetts by a newborn screening services program), by the First Circuit's complimentary nod to the "detailed discussion of the University's mission, its governance, its financial relationship to the state and similar matters" that led the district court in Neo Gen to conclude that the University of Massachusetts is an "arm of the state," id., 187 F.3d at 27, and by the weight of precedent elsewhere supporting that result, see Chemerinsky, Federal Jurisdiction, § 7.4, at 414-415 (2003), that this case does not call for a revisiting of the issue.[4]

---

[3]The pleadings indicate that the CVIP is expected to generate some $25 million of revenue for the University of Massachusetts in the coming year.

[4]While the determination whether an entity is an "arm of the state" requires the application of federal law, the many Massachusetts state court decisions holding that the

3

## ORDER

For the foregoing reasons, plaintiff's motion to remand is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

University of Massachusetts is a state agency, <u>see</u> <u>e.g.</u>, <u>McNamara v. Honeyman</u>, 406 Mass. 43, 47-48 (1989), "are entitled to great deference." <u>Chesterton</u>, 2 F.3d at 1205 n.8.